**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERIQUEST MORTGAGE SECURITIES, INC., ASSET- BACKED PASS THROUGH CERTIFICATES, SERIES 2004-R8,** | § § § § § § | |
| **Plaintiff,** | § § § | |
| **v.** | § § § | **CIVIL ACTION NO. 4:26-cv-4067** |
| **MERVYN KEITH FERGUSON and MICHELE MOHAG FERGUSON,** | § § § § | |
| **Defendants.** | § § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR
DECLARATORY JUDGMENT AND REFORMATION**

TO THE HONORABLE JUDGE OF SAID COURT:

Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2004-R8 files this Original Complaint against Defendants Mervyn Keith Ferguson and Michele Mohag Ferguson (collectively "*Defendants*"). Deutsche Bank seeks reformation of the Texas Home Equity Security Instrument signed by Plaintiffs and the subsequent Substitute Trustee's Deed to include both lots on which the house sits so the property can be marketed and sold.

## I.　PARTIES

1.　Plaintiff Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2004-R8, is the mortgagee of record under the Texas Home Equity Security Instrument at issue and was the grantee under the Substitute Trustee's Deed after foreclosure.

4916-9965-0461

2.     Defendant Merwyn Keith Ferguson is an individual residing in Montgomery County, Texas, who may be served with process at 3811 Appian Way, New Caney, Texas 77357-3196, or wherever he may be found.

3.     Defendant Michele Mohag Ferguson is an individual residing in Montgomery County, Texas, who may be served with process at 3811 Appian Way, New Caney, Texas 77357-3196, or wherever she may be found.

## II.     JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this action involves an interest in real property located in Montgomery County, Texas, which is within this District.

## III.     FACTUAL BACKGROUND

### A.     The 2003 Loan and Security Instrument

6.     Merwyn Ferguson and Michele Ferguson signed a Texas Home Equity Security Instrument (the "***Security Instrument***") dated December 9, 2003 in favor of Ameriquest Mortgage Company to secure repayment of a promissory note in the original principal amount of $425,000.00.[1]     The Security Instrument was recorded in the Official Public Records of Montgomery County, Texas, under Clerk's File No. 2003158034.  The Property was commonly known as 3811 Appian Way, New Caney, Texas 77357 (the "***Property***").  The legal description of the Property in the Security Instrument was:

---

[1] *See* Texas Home Equity Security Instrument, Exhibit A.

4916-9965-0461

*"Lot Eleven (11), Block Eight (8), of Roman Forest, Section Five (5), out of the Pryor Bryan Survey, Abstract No. 76, in Montgomery County, Texas, according to the map or plat recorded in Volume 10, Page 44, and in Cabinet A, Sheets 74B of the Map Records of Montgomery County, Texas."*

**B.      2019 Foreclosure and Substitute Trustee's Deed**

7.      Merwyn Ferguson and Michele Ferguson defaulted on their payment obligations and Deutsche Bank filed a Petition seeking a Home Equity Foreclosure Order in the 284th District Court of Montgomery on May 15, 2019 under Case No. 19-05-06694.  Defendants did not answer or otherwise appear in that suit.  The Court entered a Final Order allowing home equity foreclosure on July 1, 2019.  Deutsche Bank then foreclosed on September 3, 2019 and was the highest bidder, buying the Property for $344,000.00.  A Substitute Trustee's Deed was then recorded providing the details of the foreclosure sale and giving title to Deutsche Bank.[2]

**C.      2020 Special Warranty Deed to Value Place Properties**

8.      Deutsche Bank then sold the Property to Value Place Properties, LLC ("***Value Place***") on October 15, 2020.[3]  After that sale, the Managing Member of Value Place, Leanne Delice, entered the house and discovered that Defendants still resided in the house and claimed sole possession of the house.  Ms. Delice then discovered through a survey that the house straddled two lots – Lot 11 and Lot 12.  In fact, the lot line ran through the middle of the house.  A diagram from the Montgomery County Appraisal District depicts the house bisected by the lot line:

---

[2] *See* Substitute Trustee's Deed, Recorded as Clerk's File No. 2019086317 in the Official Public Records of Montgomery County, Exhibit B.

[3] *See* Special Warranty Deed with Vendor's Lien, recorded under Clerk's File No. 2021003223 in the Official Public Records of Montgomery County, Texas. Exhibit C.

Page 3 of 7



Because the house physically straddles both Lot 11 and Lot 12, Value Place was unable to take possession of the house.

9.    Because of this issue, Value Place signed a Special Warranty Deed dated July 31, 2025, conveying the Property back to Deutsche Bank.[4]  The omission of Lot 12 from the legal description of the Property in the Texas Home Equity Security Instrument had persisted through each instrument in the chain of title and was not intentional, but instead the result of a scrivener's error and mutual mistake.  Reformation of the Security Instrument and Substitute Trustee's Deed is now needed to include Lot 12.  Based on the original loan amount, the fact that the lot line runs through the middle of the house, and the value of Lots 11 and 12, it is apparent that all parties to the original Security Instrument intended to include both Lots 11 and 12 in the legal description.

---

[4] *See* Special Warranty Deed dated July 31, 2025, recorded under Clerk's File No. 2026009056 in the Official Public Records of Montgomery County, Texas. Exhibit D.

4916-9965-0461

**E.      Resulting Cloud on Title**

10.     Lots 11 and Lot 12 are unmarketable individually.  Equity demands that the Court reform the documents to reflect the true agreement: that the loan, lien, foreclosure, and subsequent conveyances were intended to include both Lot 11 and Lot 12.

## IV.      CAUSES OF ACTION

**A.      Reformation**

11.     Deutsche Bank incorporates by reference the preceding paragraphs.

12.     Equity allows reformation where, due to mutual mistake or scrivener's error, a written instrument does not reflect the true agreement of the parties.  Here, the Security Instrument, Substitute Trustee's Deed, and Special Warranty Deed each failed to include Lot 12, even though the intent was to include both lots together as a single residential tract.

13.     Deutsche Bank therefore seeks reformation of the Security Instrument, Substitute Trustee's Deed, and Special Warranty Deed to correct the legal description to:

> *"Lots Eleven (11) and Twelve (12), Block Eight (8), of Roman Forest, Section Five (5), out of the Pryor Bryan Survey, Abstract No. 76, in Montgomery County, Texas, according to the map or plat thereof recorded in Volume 10, Page 44, and in Cabinet A, Sheets 74B of the Map Records of Montgomery County, Texas."*

**B.      Declaratory Judgment**

14.     An actual controversy exists between Deutsche Bank and Defendants as to the scope and effect of the Security Instrument and subsequent conveyances.

15.     Deutsche Bank seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that:

4916-9965-0461

a. The December 9, 2003 Security Instrument was intended to encumber both Lot 11 and Lot 12;

b. The September 3, 2019 Substitute Trustee's Deed was intended to encumber both Lot 11 and Lot 12;

c. The October 15, 2020 Special Warranty Deed was likewise intended to include both Lot 11 and Lot 12; and

d. Deutsche Bank's title, and the title of subsequent grantees, extends to both lots free from cloud or ambiguity.

## V.   CONDITIONS PRECEDENT

16. All conditions precedent to Deutsche Bank's claims for relief have been performed or have occurred.

## VI.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2004-R8, prays that Defendants Mervyn Keith Ferguson and Michele Mohag Ferguson be cited to appear and answer, and that the Court grant judgment:

a. Reforming the December 9, 2003 Security Instrument, the September 3, 2019 Substitute Trustee's Deed, and the October 15, 2020 Special Warranty Deed to include both Lot 11 and Lot 12;

b. Declaring that Deutsche Bank's lien and foreclosure extended to both lots, and that Deutsche Bank's title (and the title of subsequent grantees) extends to both lots; and

c. Granting such other and further relief, at law or in equity, to which Deutsche Bank may be justly entitled.

Respectfully submitted,


By: */s/ Emily Stroope*

    **EMILY STROOPE**
    State Bar No. 24070692
    **ALEXIS DEL RIO**
    State Bar No. 24120796
    **BAKER, DONELSON, BEARMAN,**
    **CALDWELL & BERKOWITZ, P.C.**
    1301 McKinney St., Suite 3700
    Houston, Texas 77010
    Telephone: (713) 650-9700
    Facsimile: (713) 650-9701
    estroope@bakerdonelson.com
    adelrio@bakerdonelson.com

    ***Attorneys for Deutsche Bank National Trust***
    ***Company, as Trustee for Ameriquest Mortgage***
    ***Securities Inc., Asset-Backed Pass-Through***
    ***Certificates, Series 2004-R8***

4916-9965-0461

# EXHIBIT "A"

FILED BY
**FIDELITY NATIONAL TITLE**
74060297

**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**

Return To:

Ameriquest Mortgage Company
P.O. Box 11507,
Santa Ana, CA 92711

Prepared By: Ameriquest Mortgage Company
Ron McLeroy
1177 West Loop South, # 1850
Houston, TX 77027

**2003-158034**

——————————— [Space Above This Line for Recording Data] ———————————

## THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.

# TEXAS HOME EQUITY SECURITY INSTRUMENT
## (First Lien)

**This Security Instrument is not intended to finance Borrower's acquisition of the Property.**

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) "Security Instrument" means this document, which is dated December 9, 2003 ,
together with all Riders to this document.
(B) "Borrower" is MERWYN KEITH FERGUSON and spouse, MICHELE MOHGA FERGUSON

Borrower is the grantor under this Security Instrument.
(C) "Lender" is Ameriquest Mortgage Company

Lender is a Corporation
organized and existing under the laws of Delaware

0062566146 - 5658

**TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

VMP -8036(TX) (0010).01
Form 3044.1 1/01

Page 1 of 17        Initials: MKF

VMP MORTGAGE FORMS - (800)521-7291

12/09/2003 7:16:11 AM

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

Lender's address is 1100 Town and Country Road, Suite 200   Orange, CA 92868

Lender includes any holder of the Note who is entitled to receive payments under the Note. Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is Ameriquest Mortgage Company

. Trustee's address is

1100 Town and Country Road, Suite 200   Orange, CA 92868

(E) "Note" means the promissory note signed by Borrower and dated December 9, 2003
The Note states that Borrower owes Lender four hundred twenty-five thousand and
00/100                                                                                      Dollars
(U.S. $ 425,000.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than January 1, 2034       .

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Extension of Credit" means the debt evidenced by the Note, as defined by Section 50(a)(6), Article XVI of the Texas Constitution and all the documents executed in connection with the debt.

(H) "Riders" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower *[check box as applicable]*:

☐ Texas Home Equity Condominium Rider          ☐ Other:
☒ Texas Home Equity Planned Unit Development Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Extension of Credit does not qualify as a "federally related mortgage loan" under RESPA.

0062566146 - 5658
Initials MKF

-8036(TX) (0010) 01                Page 2 of 17      12/09/2003 7:16:11   Form 3044.1  1/01

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

(P) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Extension of Credit, and all extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described Property located in the
County                    of              MONTGOMERY              :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 8397-05-28100                    which currently has the address of
3811 APPIAN WAY                                                    [Street]
NEW CANEY                                        [City], Texas 77357          [Zip Code]
("Property Address"):

　　TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution.

　　BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

　　Borrower and Lender covenant and agree as follows:

　　**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid,

0062566146-5658
Initials: _MKF_

-8036(TX) (0010).01                    Page 3 of 17    12/09/2003 7:16:11    Form 3044.1  1/01

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

Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Extension of Credit current. Lender may accept any payment or partial payment insufficient to bring the Extension of Credit current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Extension of Credit current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Extension of Credit, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender

0062566146 - 5698
Initials: MKF

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

and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

0062566146 -5658
Initials: *MKP*

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

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Extension of Credit.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Extension of Credit. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Extension of Credit, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

0062566146 5688
Initials: _____

-8036(TX) (0010) 01          Page 6 of 17     12/09/2003 7:16:11    Form 3044.1   1/01

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

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower now occupies and uses the Property as Borrower's Texas homestead and shall continue to occupy the Property as Borrower's Texas homestead for at least one year after the date of this Security Instrument, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower's actions shall constitute actual fraud under Section 50(a)(6)(c), Article XVI of the Texas Constitution and Borrower shall be in default and may be held personally liable for the debt evidenced by the Note and this Security Instrument if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan or any other action or inaction that is determined to be actual fraud. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as a Texas homestead, the representations and warranties contained in the Texas Home Equity Affidavit and Agreement, and the execution of an acknowledgment of fair market value of the property as described in Section 27.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien

0062566146 -5638
Initials: *M.K.P.*

-8036(TX) (0010) 01          Page 7 of 17     12/09/2003 7:16:11    Form 3044.1   1/01

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

which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9. No powers are granted by Borrower to Lender or Trustee that would violate provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other Applicable Law.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages,

0062566146 - 5658
Initials: _MKF_ _MWB_

-8036(TX) (0010) 01                    Page 8 of 17      12/09/2003 7:16:11      Form 3044.1   1/01

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

Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding which is not commenced as a result of Borrower's default under other indebtedness not secured by a prior valid encumbrance against the homestead, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Security Instrument Execution; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any person who signs this Security Instrument but does not execute the Note: (a) is signing this Security Instrument only to mortgage, grant and convey the person's interest in the Property under the terms of this Security Instrument or to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution; (b) is not obligated to pay the sums secured by this Security Instrument and is not to be considered a guarantor or surety; (c) agrees that this Security Instrument establishes a voluntary lien on the homestead and constitutes the written agreement evidencing the consent of each owner and each owner's spouse; and (d) agrees that Lender and Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Extension of Credit Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

0062566146 - 5658
Initials: MKP MW

-8036(TX) (0010) 01                    Page 9 of 17     12/09/2003 7:16:11     Form 3044.1   1/01

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

If the Extension of Credit is subject to a law which sets maximum Extension of Credit charges, and that law is finally interpreted so that the interest or other Extension of Credit charges collected or to be collected in connection with the Extension of Credit exceed the permitted limits, then: (a) any such Extension of Credit charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). **Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.**

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail (but, by certified mail if the notice is given pursuant to Section 19) to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the laws of Texas. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copies.** Borrower shall be given at the time this Extension of Credit is made, a copy of all documents signed by Borrower related to the Extension of Credit.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

0062566146-5658
Initials

-8036(TX) (0010).01          Page 10 of 17    12/09/2003 7:16:1   Form 3044.1   1/01

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

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses, insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance; Lender's Right-to-Comply.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Extension of Credit is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

0062566146 -5658

Initials _MKP_

-8036(TX) (0010).01                 Page 11 of 17    12/09/2003  7:16:11    Form 3044.1   1/01

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

It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed not to allow Lender a reasonable time to comply, as provided in this Section 19, with Lender's obligations under the Extension of Credit. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have a reasonable time to comply, with any of the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Section 14, and will give Lender a reasonable time to comply. Borrower will cooperate in reasonable efforts to effectuate any compliance. Only after Lender has received said notice, has had a reasonable time to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by Lender to comply with its obligations under this Extension of Credit.

In the event that, for any reason whatsoever, any obligation of Borrower or of Lender pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this Section 19, and the document shall be automatically reformed, without the necessity of the execution of any amendment or new document, so that Borrower's or Lender's obligation shall be modified to conform to the Texas Constitution, and in no event shall Borrower or Lender be obligated to perform any act, or be bound by any requirement which would conflict therewith.

All agreements between Lender and Borrower are expressly limited so that any interest, Extension of Credit charge or fee collected or to be collected (other than by payment of interest) from Borrower, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by Applicable Law.

It is the express intention of Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, this Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by Applicable Law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

Lender's right-to-comply as provided in this Section 19 shall survive the payoff of the Extension of Credit. The provision of this Section 19 will supersede any inconsistent provision of the Note or this Security Instrument.

**20. Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

0062566146 - 5658
Initials. ƆƘƐ

-8036(TX) (0010).01          Page 12 of 17    12/09/2003 7:16:11   Form 3044.1  1/01

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

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.**

**The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for Borrower in a judicial proceeding.**

**22. Power of Sale.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of the Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law. Accordingly, Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court. To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Section 22 shall apply, if Lender invokes the power of sale. Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the

0062566146 - 5658
Initials: M KP

-8036(TX) (0010).01                    Page 13 of 17    12/09/2003 7:16:11    Form 3044.1  1/01

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

time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Within a reasonable time after termination and full payment of the Extension of Credit, the Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recordation costs. **OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF LENDER'S OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

**24. Non-Recourse Liability.** Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all of Borrower's promises and obligations in the Note and this Security Instrument are performed.

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the Property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, then, subject to Section 12, Borrower will be personally liable for the payment of any amounts due under the Note or this Security Instrument. This means that a personal judgment could be obtained against Borrower, if Borrower fails to perform Borrower's responsibilities under the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 24 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument.

**25. Proceeds.** Borrower has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or a debt to another lender.

0062566146 - 5658
Initials: *mKF*

-8036(TX) (0010).01          Page 14 of 17     12/09/2003 7:16:11     Form 3044.1   1/01

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

**26. No Assignment of Wages.** Borrower has not assigned wages as security for the Extension of Credit.

**27. Acknowledgment of Fair Market Value.** Lender and Borrower have executed a written acknowledgment as to the fair market value of Borrower's Property on the date the Extension of Credit is made.

**28. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**29. Acknowledgment of Waiver by Lender of Additional Collateral.** Borrower acknowledges that Lender waives all terms in any of Lender's loan documentation (whether existing now or created in the future) which (a) create cross default; (b) provide for additional collateral; and/or (c) create personal liability for any Borrower (except in the event of actual fraud), for the Extension of Credit. This waiver includes, but is not limited to, any (a) guaranty; (b) cross collateralization; (c) future indebtedness; (d) cross default; and/or (e) dragnet provisions in any loan documentation with Lender.

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

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS EXTENSION OF CREDIT WITHOUT PENALTY OR CHARGE.

_____     _____ (Seal)
                                             MERWYN KEITH FERGUSON       -Borrower

_____     _____ (Seal)
                                             MICHELE MOHGA FERGUSON       -Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                                      -Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                                      -Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                                      -Borrower

0062566146 - 5658

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

**STATE OF TEXAS,** County ss: HARRIS

Before me USA Lum 9 December 2003 on this day personally appeared
Merwyn Keith Ferguson : Michele Mohga Ferguson

known to me (or proved to me on the oath of WORD
or through Drivers License to be the person whose
name is subscribed to the foregoing instrument and acknowledged to me that he/she/they
executed the same for the purposes and considerations therein expressed.

Given under my hand and official seal of office this 9 day of December 2003



LISA LUM
Notary Public, State of Texas
My Commission Expires
3-5-2006

Notary Public

My Commission Expires: 3-5-06

MKF

401-17TX (4/02)                    Page 17 of 17                    0062566146 - 5658

12/09/2003 7:16:11 AM

Lot Eleven (11), of Block Eight (8), of Roman Forest, Section Five (5), out of the Pryor Bryan Survey, Abstract No. 76 in Montgomery County, Texas according to the map or plat recorded in Volume 10, Page 44 and in Cabinet A, Sheet 74B of the Map Records of Montgomery County, Texas.

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

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

# TEXAS HOME EQUITY
# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 9th                                   day of
December, 2003                    , and is incorporated into and shall be deemed to amend and supplement
the Security Instrument of the same date, given by the undersigned (the "Borrower") to secure Borrower's
Note to Ameriquest Mortgage Company


(the "Lender") of the same date and covering the Property described in the Security Instrument and located
at: 3811 APPIAN WAY, NEW CANEY, TX  77357


[Property Address]


The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with
other such parcels and certain common areas and facilities, as described in covenants, conditions, and
restrictions filed in the Real Property records of the county in which the Property is located (the
"Declaration"). The Property is a part of a planned unit development described in the Declaration (the
"PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity
owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses,
benefits and proceeds of Borrower's interest. Insofar as permitted by Section 50(a)(6)(H), Article XVI of
the Texas Constitution, "homestead" shall include the elements of the Property described by this Rider.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii)
any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and
which provides insurance coverage in the amounts (including deductible levels), for the periods, and
against loss by fire, hazards included within the term "extended coverage," and any other hazards,
including, but not limited to, earthquakes and floods, from which Lender requires insurance, then:

(i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly
premium installments for property insurance on the Property; and

(ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is
deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

0062566146

**TEXAS HOME EQUITY PLANNED UNIT DEVELOPMENT RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

0062566146 - 5658

12/09/2003 7:16:11

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

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 10.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i)   the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii)  any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender, if allowed by Applicable Law, may pay them. Any amounts disbursed by Lender under this Paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

0062566146 - 56580062566146

-8037(TX) (0008)         Page 2 of 3    12/09/2003 7:16:11 Form 3150.44 1/01

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

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

_____ (Seal)
MERWYN KEITH FERGUSON                -Borrower

_____ (Seal)
MICHELE MOHGA FERGUSON            -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

RECORDER'S MEMORANDUM:
At the time of recordation, this instrument was found to be inadequate for the best photographic reprodution because of illegibility, carbon or photo copy, discolored paper, etc. All black-outs, additions and changes were present at the time the instrument was filed and recorded.

_____ (Seal)
-Borrower

12/09/2003 7:16:11 AM
0062566146

-8037(TX) (0008)  Page 3 of 3

Form 3150.44 1/01

FILED FOR RECORD
2003 DEC 31 PM 3: 52

COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

STATE OF TEXAS
COUNTY OF MONTGOMERY
I hereby certify this instrument was filed in File Number Sequence on the date and at the time stamped herein by me and was duly RECORDED in the Official Public Records of Real Property at Montgomery County, Texas.

DEC 3 1 2003



County Clerk
Montgomery County, Texas

# EXHIBIT "B"

# SUBSTITUTE TRUSTEE'S DEED

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

C&M No. 44-19-0825/Home Equity/auction.com
PHH Mortgage Corporation

| | |
|---|---|
| **Date of Security Instrument:** | December 09, 2003 |
| **Grantor(s):** | Merwyn Keith Ferguson and spouse, Michele Mohga Ferguson |
| **Original Trustee:** | Ameriquest Mortgage Company |
| **Original Mortgagee:** | Ameriquest Mortgage Company |
| **Recording Information:** | in Clerk's File No. 2003-158034 in the Official Public Records of Montgomery County, Texas |
| **Current Mortgagee:** | Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2004-R8 |

**Mortgage Servicer:** PHH Mortgage Corporation whose address is 1 Mortgage Way, Mount Laurel, NJ 08054. Pursuant to a Servicing Agreement between the Mortgage Servicer and Mortgagee, the Mortgage Servicer is authorized to represent the Mortgagee. Pursuant to the Servicing Agreement and Section 51.0025 of the Texas Property Code, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the referenced property.

| | |
|---|---|
| **Date of Sale:** | **September 03, 2019** |
| **Amount of Sale:** | **$340,000.00** |
| **Grantee/Buyer:** | **Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2004-R8**<br>**1 Mortgage Way, Mount Laurel, NJ 08054** |

**Legal Description:** LOT ELEVEN (11), OF BLOCK EIGHT (8), OF ROMAN FOREST, SECTION FIVE (5), OUT OF THE PRYOR BRYAN SURVEY, ABSTRACT NO. 76 IN MONTGOMERY COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT RECORDED IN VOLUME 10, PAGE 44 AND IN CABINET A, SHEET 74B OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS

**Place of Sale of Property:** In the area designated by the Montgomery County Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where the foreclosure sales are to take place, or if no place is designated by the Commissioners Court, the place where the Notice of Trustee's Sale was posted.

Grantor conveyed the property to Trustee in trust to secure payment of the Note. Mortgagee, through the Mortgage Servicer, declared that Grantor defaulted in performing the obligations of the Deed of Trust. Current Mortgagee, through the Mortgage Servicer, has appointed the Substitute Trustee and requested the Substitute Trustee to enforce the trust.

Notices stating the time, place and terms of sale of the property were mailed, posted and filed, as required by law. The Substitute Trustee sold the property to Buyer, who was the highest bidder for cash at the public auction, for the amount of the sale in the manner prescribed by law. The sale was conducted no earlier than **10:00 AM**, as set forth in the Notice of Trustee's Sale and was concluded within three hours of such time. All matters, duties and obligations of the Mortgagee were legally performed.

Substitute Trustee, subject to any matters of record, and for the amount of sale paid by Buyer as consideration, grants, sells and conveys to Buyer, Buyer's heirs, executors, administrators, successors or assigns forever, the property together with all rights and appurtenances belonging to Grantor, Substitute Trustee hereby sell the above referenced property AS IS without any express or implied warranties, and hereby conveys the property to the purchaser at the purchaser's own risk, pursuant to the terms of Texas Property Code §51.002 and §51.009.

*Affidavit of Posting/Filing Notice of Sale is attached hereto marked as Exhibit "1" and Affidavit is attached hereto marked as Exhibit "2" is by this reference incorporated herein for all purposes.*

EXECUTED this ___11___ day of ___September___, 2019.

_____
**Vince Ross**
Substitute Trustee

**STATE OF TEXAS**

**COUNTY OF** ___Montgomery___

Before me, the undersigned Notary Public, on this day personally appeared **Vince Ross** as Substitute Trustee, known to me or proved to me through a valid State driver's license or other official identification to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that (s)he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ___11___ day of ___September___, **2019**.

_____
Notary Public State of Texas

**RETURN TO:**
**CODILIS & MOODY, PC**
**400 North Sam Houston Parkway East, Suite 900A**
**Houston, Texas 77060**

WILL SMITH
My Notary ID # 126809131
Expires February 18, 2021

Received and E-Filed for Record
6/26/2019 12:15 PM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Megan Shiflett

## CAUSE NO. 19-05-06694

| | | |
|---|---|---|
| IN RE: ORDER FOR FORECLOSURE | § | IN THE DISTRICT COURT OF |
| CONCERNING | § | |
| 3811 APPIAN WAY | § | |
| NEW CANEY, TX 77357 | § | |
| | § | |
| UNDER TEX. R. CIV. PROC. 736 | § | MONTGOMERY COUNTY, TEXAS |
| | § | |
| PETITIONER: | § | |
| | § | |
| DEUTSCHE BANK NATIONAL TRUST | § | |
| COMPANY, AS TRUSTEE FOR | § | |
| AMERIQUEST MORTGAGE | § | |
| SECURITIES INC., ASSET-BACKED | § | |
| PASS-THROUGH CERTIFICATES, | § | |
| SERIES 2004-R8 | § | |
| | § | |
| RESPONDENT(S): | § | |
| | § | |
| MERWYN KEITH FERGUSON AND | § | |
| MICHELE MOHGA FERGUSON | § | 284th JUDICIAL DISTRICT |

## ORDER GRANTING PETITIONER'S APPLICATION FOR EXPEDITED FORECLOSURE UNDER TEX. R. CIV. PROC. 736

Came on for consideration the application of Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2004-R8 its Successors and Assigns (hereinafter Petitioner), for Order for Foreclosure pursuant to Rule 736 of the Texas Rules of Civil Procedure. The Court is of the opinion that said application should be GRANTED.

The court finds this is an *in rem* proceeding; that the Application filed by Petitioner complies with TEX. R. CIV. PROC. 735 and 736; that specifically:

1. **Rule 736.8 (b) (1)** - The material facts establishing Respondent's default are alleged in Petitioner's application and the supporting affidavit. Those facts are adopted by the court and incorporated by reference in this order.

C&M# 44-19-0825

2. **Rule 736.8 (b) (2)** - The property to be foreclosed is commonly known as 3811

APPIAN WAY, NEW CANEY, TX 77357. The legal description of the Property is:

LOT ELEVEN (11), OF BLOCK EIGHT (8), OF ROMAN FOREST, SECTION
FIVE (5), OUT OF THE PRYOR BRYAN SURVEY,
ABSTRACT NO. 76 IN MONTGOMERY COUNTY, TEXAS ACCORDING
TO THE MAP OR PLAT RECORDED IN VOLUME 10, PAGE
44 AND IN CABINET A, SHEET 74B OF THE MAP RECORDS OF
MONTGOMERY COUNTY, TEXAS

3. **Rule 736.8 (b) (3)** – Respondents are Merwyn Keith Ferguson and Michele Mohga

Ferguson whose last known addresses are:

MERWYN KEITH FERGUSON 3811 APPIAN WAY, NEW CANEY, TX 77357

MICHELE MOHGA FERGUSON 3811 APPIAN WAY, NEW CANEY, TX 77357

Each Respondent was properly served with the citation, but none filed a response within

the time required by law. The return of service of each Respondent has been on file with the

court for at least ten days.

4. **Rule 736.8 (b) (4)** - Texas Home Equity Security Instrument was duly recorded in the

Official Real Property Records of MONTGOMERY County, Texas under clerk's file

number 2003-158034.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Petitioner may

proceed with foreclosure under the Security Instrument and under TEX. PROP. CODE § 51.002

of the property located at 3811 APPIAN WAY, NEW CANEY, TX, 77357 and described as

follows:

LOT ELEVEN (11), OF BLOCK EIGHT (8), OF ROMAN FOREST, SECTION
FIVE (5), OUT OF THE PRYOR BRYAN SURVEY,
ABSTRACT NO. 76 IN MONTGOMERY COUNTY, TEXAS ACCORDING
TO THE MAP OR PLAT RECORDED IN VOLUME 10, PAGE
44 AND IN CABINET A, SHEET 74B OF THE MAP RECORDS OF
MONTGOMERY COUNTY, TEXAS

C&M# 44-19-0825

Minute
2nd of July, 2019

It is further ORDERED that a copy of this Order shall be sent to respondents with the notice of sale. It is further ORDERED that applicant may communicate with the respondents and all third parties reasonably necessary to conduct the foreclosure sale.

IT IS FURTHER ORDERED that this order is not subject to a motion for rehearing, a new trial, a bill of review, or an appeal. Any challenge to this order must be made in a separate, original proceeding filed in accordance with Texas Rule of Civil Procedure 736.11.

Signed: 6/26/2019 03:11 PM

SIGNED this _____ day of _____, 2019.

**JUDGE PRESIDING**

APPROVED AS TO FORM AND ENTRY REQUESTED:

CODILIS & MOODY, P.C.

By: _____
Annarose M. Harding SBOT 24071438
Nicole M. Bartee SBOT 24001674
Danya F. Gladney SBOT 24059786
Aaron Demuth SBOT 24111076
Lisa L. Cockrell SBOT 24036379
400 N. Sam Houston Pkwy E, Suite 900A
Houston, TX 77060
Telephone: (281) 925-5200
Facsimile: (281) 925-5300
Email: Homeequity@tx.cslegal.com
ATTORNEYS FOR PETITIONER

C&M# 44-19-0825

Minute
2nd of July, 2019

Exhibit "1"

## AFFIDAVIT OF POSTING/FILING NOTICE OF SALE

The undersigned, having knowledge of the matters hereinafter set forth, after being duly sworn, deposes and states under oath, as follows:

"On behalf of the servicer and/or holder and/or owner of the indebtedness secured by a Deed of Trust/Security Instrument, dated December 09, 2003 executed by **Merwyn Keith Ferguson and spouse, Michele Mohga Ferguson** to Ameriquest Mortgage Company, Trustee(s) and recorded in the office of County Clerk in Clerk's File No. 2003-158034 of Montgomery County, Texas; at least twenty-one (21) days preceding the sale on the 3rd day of September, 2019;

   (i)     Written notice of the proposed sale designating the County in which the property securing the above Deed of Trust/Security Instrument will be sold, was posted ("Notice of Sale") at the courthouse door of each County in which the property securing the above Deed of Trust/Security Instrument is located, or as otherwise designated by the County Commissioners; and

   (i)     A copy of said Notice of Sale was filed in the office of the County Clerk of the County in which the sale was made."

_____
Patricia Poston, Substitute Trustee

STATE OF TEXAS

COUNTY OF _GALVESTON_

BEFORE ME, the undersigned authority on this day personally appeared Patricia Poston known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed same in the capacity herein stated and for the purposes and consideration therein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME on this _12_ day of _SEP._, 2019.

_____
NOTARY PUBLIC

**C&M No. 44-19-0825**

DAVID WAYNE POSTON
Notary Public, State of Texas
Comm. Expires 04-19-2021
Notary ID 129393869

Exhibit "2"

## AFFIDAVIT

BEFORE ME, the undersigned authority, personally appeared the undersigned affiant who, after being duly sworn, deposes and states under oath as follows:

"I am above the age of eighteen (18) years and am competent to make this affidavit and knowledgeable of the statements made in this affidavit.

At the instructions of the servicer and/or holder and/or owner of the indebtedness secured by a Deed of Trust/Security Instrument, dated December 09, 2003 executed by Merwyn Keith Ferguson and spouse, Michele Mohga Ferguson to Ameriquest Mortgage Company, Trustee(s) and recorded in the office of County Clerk in 2003-158034 of MONTGOMERY County, Texas; and based upon the information provided by or on behalf of such servicer and/or holder and/or owner of the indebtedness, our office sent out the written notice of the proposed sale of the real property encumbered by said Deed of Trust/Security Instrument scheduled for September 03, 2019 was mailed to each debtor who, according to the records of such servicer and/or holder and/or owner is obligated to pay the debt. Service of the written notice was completed on August 13, 2019. On that date, the notice was deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. August 13, 2019, the date service of the notice was completed, was a date at least twenty-one (21) days preceding the date of the scheduled sale.

To the best of the my knowledge and belief, the obligor(s) had not filed any bankruptcy proceeding pending at the time of the foreclosure sale, was/were alive at the time of the foreclosure sale, and based upon information obtained from the U.S. Defense Manpower internet military website, it is my belief that such obligor(s) is/are not in the armed services of the United States of America twelve months prior hereto or on the date of the foreclosure sale and as of the date of this Affidavit.

Signed on this 4th day of September, 2019.

Codilis & Moody, P.C.

Thomas Delaney

**STATE OF TEXAS**

**COUNTY OF HARRIS**

BEFORE ME, the undersigned authority on this day personally appeared Thomas Delaney known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed same in the capacity herein stated and for the purposes and consideration therein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME on this 4th day of September, 2019.

NOTARY PUBLIC in and for
THE STATE OF TEXAS

C&M No. 44-19-0825

JANIE F HARRIS
Notary ID # 125166087
My Commission Expires
January 30, 2021

**Doc #: 2019086317**
**Pages 8**

**E-FILED FOR RECORD**
09/16/2019   04:53PM

COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

STATE OF TEXAS,
COUNTY OF MONTGOMERY
I hereby certify that this instrument was e-filed in the file number
sequence on the date and time stamped herein
by me and was duly e-RECORDED in the Official Public
Records of Montgomery County, Texas.

**09/16/2019**

County Clerk
Montgomery County, Texas

# EXHIBIT "C"

SPECIAL WARRANTY DEED WITH VENDOR'S LIEN

GF#: CE1909-TX-3576351
Property Address: 3811 Appian Way, New Caney, Texas 77357
PIN/Tax ID# 8397-05-28100

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REVOKE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

**Date:**              October 15, 2020

**Grantor:**           **Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Asset-Backed Pass Through Certificates, Series 2004-R8**

**Grantor's Address**   C/O PHH Mortgage Corporation
                       1 Mortgage Way
                       Mount Laurel, NJ 08054

**Grantee:**           **Leanne Delice, an Unmarried Woman**

**Grantee's Address:**  24055 Paseo Del Lago, Unit 412, Laguna Woods, CA 92637

**Consideration**: TEN AND NO/100 DOLLARS ($10.00); and other good and valuable consideration in hand paid by the Grantee, the receipt and sufficiency of which is hereby acknowledged;

AND, THE FURTHER CONSIDERATION of the execution and delivery by Grantee of that one certain promissory note in the original principal sum of **$50,000.00**, bearing interest as therein specified and being due and payable as therein provided to the order of **MICHAEL R. GROW JR, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY** ("Lender"); and secured by the Vendor's Lien and Superior Title retained herein; and being additionally secured by a Deed of Trust of even date therewith describing the Note to **Superior Loan Servicing**, as Trustee; on the condition that this Vendor's Lien is cumulative of and without prejudice of or to said Deed of Trust;

**Property (including any improvements):**

LOT ELEVEN (11), OF BLOCK EIGHT (8), OF ROMAN FOREST, SECTION FIVE (5), OUT OF THE PRYOR BRYAN SURVEY, ABSTRACT NO. 76 IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT RECORDED IN VOLUME 10, PAGE 44 AND IN CABINET A, SHEETS 74B OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.

**Reservations from and Exceptions to Conveyance and Warranty:** This conveyance is made and accepted subject to all easements, reservations, conditions, covenants and restrictive covenants as the same appear of record in the Office of the County Clerk of the County in which the Property is situated; any apparent easements, whether visible or not, rights-of-ways and prescriptive rights, whether of record or not, to the extent that the same apply to the property described herein; rights of adjoining owners in any walls and fences situated in a common boundary; any discrepancies, conflicts or shortages in area or boundary lines; any encroachments or overlapping of improvements; and taxes for the current year and all subsequent years, and for prior years resulting from a change in the use or ownership of the Property, the payment of which Grantee assumes.

GRANTOR, for and in Consideration and subject to the Reservations from and Exceptions to Conveyance and Warranty, GRANTS, SELLS, and CONVEYS to GRANTEE the Property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantor binds Grantor and Grantor's successors, administrators, and assigns to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, executors, administrators, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from and Exceptions to Conveyance and Warranty, by, through or under Grantor, but not otherwise.

The Vendor's Lien against and superior title to the Property herein conveyed are retained until each note described herein is fully paid according to its terms, at which time this Deed shall become absolute. Lender, at Grantee's request, has paid in cash to Grantor that portion of the purchase price of the Property that is evidenced by the note. The first and superior vendor's lien against and superior title to the Property are retained for the benefit of Lender and are transferred to Lender, without recourse against Grantor.

As a material part of the Consideration for this special warranty deed, Grantor and Grantee agree that Grantee is taking the Property "AS IS" with any and all latent and patent defects and that there is no warranty by Grantor that the Property has a particular financial value or is fit for a particular purpose. Grantee acknowledges and stipulates that Grantee is not relying on any representation, statement, or other assertion with respect to the Property condition but is relying on Grantee's examination of the Property. Grantee takes the Property with the express understanding and stipulation that there are no express or implied warranties.

When the context requires, singular nouns and pronouns include the plural.

**GRANTOR:**

Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Asset-Backed PassThrough Certificates, Series 2004-R8

By its attorney-in-fact PHH Mortgage Corporation

BY: _____

NAME: ___**Jacqueline S. Michaelson**___ *10/15/2020*

TITLE: ___**Contract Management Coordinator**___

**ACKNOWLEDGMENT**

THE STATE OF ___FLORIDA___ §
§
COUNTY OF ___PALM BEACH___ §

The foregoing instrument was acknowledged before me by means of ☒ physical presence or ☐ online notarization, this __15__, day of **October, 2020**, by **Jacqueline S. Michaelson**, **Contract Management Coordinator** of its attorney-in-fact **PHH Mortgage Corporation** for **Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Asset-Backed PassThrough Certificates, Series 2004-R8** who is **personally known to me** or who has produced **N/A** as identification.

_____
Signature of Notary Public

Name of Notary Public: ___Daniel Grafton___
Notary Commission Expiration Date: ___----------___
Personally known: ___X___
OR Produced Identification: ___----------___

Notary Public State of Florida
Daniel Grafton
My Commission GG 119278
Expires 06/27/2021

**POA recorded simultaneously herewith**

AFTER RECORDING RETURN TO:
**Value Place Properties, LLC**
24055 Paseo del lago,
Laguna Woods, CA 92637

**Doc #: 2021003223**

**Pages 3**

**E-FILED FOR RECORD**
01/11/2021    10:04AM

COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

STATE OF TEXAS,
COUNTY OF MONTGOMERY
I hereby certify that this instrument was e-filed in the file number
sequence on the date and time stamped herein
by me and was duly e-RECORDED in the Official Public
Records of Montgomery County, Texas.

**01/11/2021**

County Clerk
Montgomery County, Texas

# EXHIBIT "D"

After recording, return to:

Emily Stroope
Baker Donelson
5956 Sherry Lane, 20th Floor
Dallas, Texas 75225

**NOTICE OF CONFIDENTIALITY RIGHTS; IF YOU ARE A NATURAL PERSON, YOU MAY REVOKE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

SPECIAL WARRANTY DEED

**Date:**

July 31, 2025

**Grantor:**

Value Place Properties, LLC, a Texas limited liability company

**Grantor's Mailing Address (including county):**

24055 Paseo del Lago
Laguna Woods
CA, 92637

**Grantee:**

Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2004-R8

**Grantee's Mailing Address (including county):**

c/o PHH Mortgage Corporation
2000 Midlantic Drive, Suite 410
Mt. Laurel, NJ 08054

**Consideration:**

TEN AND NO/100 ($10.00) DOLLARS; and other good and valuable considerations in hand paid by the GRANTEE herein named, the receipt of which is hereby acknowledged.

1

4922-0990-7234v1
2914856-300051 07/31/2025

**Property (including any improvements):**

Lot 11, in Block 8 of Roman Forest, Section 1, a subdivision in Montgomery County, Texas, according to the Map or Plat thereof recorded in Cabinet A, Sheet 27A, of the Map Records of Montgomery County, Texas.

**Reservations from Conveyance:**

None.

**Exceptions to Conveyance and Warranty:**    All matters of record.

Grantor, for the Consideration and subject to the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof when the claim is by, through, or under Grantor but not otherwise, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

When the context requires, singular nouns and pronouns include the plural.

GRANTOR:

Value Place Properties, LLC, a Texas limited liability company

Printed Name: _Leanne Delice_

Title: _Owner_

Date: _1/20/26_

2

4922-0990-7234v1
2914856-300051 07/31/2025

STATE OF _____

COUNTY OF _____

BEFORE ME, the undersigned authority, on the _____ day of _____, 2025, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

_____
Notary Public, State of _____

_____
Printed or Typed Name of Notary
My Commission Expires:_____

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _Orange_

On _01-20-2025_ before me, _Maria Lopez Notary Public_
        Date                          Here Insert Name and Title of the Officer

personally appeared _Leanne Delice_
                           Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity, upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
              Signature of Notary Public

MARIA LOPEZ
Notary Public - California
Orange County
Commission # 2524664
My Comm. Expires Jun 30, 2029

3

4922-0990-7234v1
2914856-300051 07/31/2025

**Doc #: 2026009056**

**Pages 4**

**E-FILED FOR RECORD**
01/30/2026    01:24PM



County Clerk,
Montgomery County, Texas

STATE OF TEXAS,
COUNTY OF MONTGOMERY
I hereby certify that this instrument was e-filed in the file number
sequence on the date and time stamped herein
by me and was duly e-RECORDED in the Official Public
Records of Montgomery County, Texas.

**01/30/2026**

County Clerk,
Montgomery County, Texas